FOR THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL E. LAMB and DONNA LAMB, )<br>10130 SE Hwy 166 )<br>Galena, Kansas 66739 )<br>    )<br>    Plaintiffs, )<br>    )<br>v.    )<br>    )<br>DAIMLER TRUCKS NORTH AMERICA, LLC,)<br>d/b/a FREIGHTLINER )<br>  Serve: )<br>  THE CORPORATION COMPANY, INC.)<br>  112 SW 7th Street, Suite 3C )<br>  Topeka, Kansas 66603 )<br>    )<br>    Defendant. ) | Case No. _____<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW Plaintiffs herein, Michael Lamb, and for his Complaint at Law against Defendant, Daimler Trucks North America, LLC, d/b/a Freightliner, state and allege as follows:

### I.  PARTIES

1. Plaintiffs Michael Lamb and Donna Lamb, currently reside in Galena, Kansas.

2. Defendant Daimler Trucks North America (hereafter "Freightliner") is a foreign limited liability company, organized and existing under the laws of the State of Delaware; at all relevant times, Defendant has been engaged in the manufacture and distribution of commercial motor vehicles under the trade name "Freightliner." At all times relevant herein, Freightliner was authorized to do and actually doing business in the State of Kansas, with its principal place of business being 1209 Orange Street, Wilmington, DE 19801. The registered agent for service process for Freightliner, is The Corporation Company, 112 SW 7th Street, Suite 3C, Topeka, Kansas.

3. Upon information and belief, the Defendant Freightliner, owned and/or operated and/or were engaged in a venture to manufacture and sell semi-trucks, and had the actual right to control the business operations, policies, procedures, and activities of such business.

4. Upon current information and belief, the Defendant, marketed, sold, and/or distributed and/or were engaged in the marketing, selling, and/or distribution of semi-truck/tractor-trailers to the general public, and in particular, equipped the semi-truck in question with the avoidance collision system at issue in this lawsuit and had the actual right to control such activities.

## II. JURISDICTION AND VENUE

5. This cause of action arises out of an incident that occurred while Mr. Lamb was operating the subject semi-truck in Overland Park, Kansas, on I-35 highway, on or about February 20, 2020.

6. Jurisdiction is proper over Defendant Freightliner pursuant to Kan. Stat.§60-308 in that it committed a tortious act within the State of Kansas.

7. Jurisdiction is proper over Freightliner in that it placed a defective product into the stream of commerce such that exercise of jurisdiction does not offend traditional notions of substantial justice.

8. Defendant Freightliner, individually or collectively manufactured, distributed, transferred, sold and/or placed into the stream of commerce the 2019 Cascadia Freightliner semi-tractor with the rear-end policing device, also known as a collision safety system, at issue in this case.

9. Venue is proper in this judicial court upon 28 U.S.C. § 1391 as the acts complained of arose in this district.

### III.   FACTS AND GENERAL ALLEGATIONS

**A.  The Semi-tractor 2019 Cascadia Freightliner's collision safety system malfunctioned to cause injuries and damages to Plaintiff Michael Lamb.**

10.     Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

11.     On or about February 20, 2020, Plaintiff Michael Lamb suffered severe injury to his neck, back, right hip, and left hand when the rear-end policing device, also known as a collision safety system, on the 2019 Cascadia Freightliner he was operating (VIN 3AKJGLDV3KDKX1533) malfunctioned as he was approaching an overpass on Interstate 35 in or near Overland Park, KS. The collision safety system picked up the approaching overpass and improperly determined it to be a solid structure that was in the roadway. The semi-truck self-braked immediately, going from approximately 65 mph to 20 mph within the distance of one truck length. The sensor malfunction registered a "crash" and caused the truck to stop immediately.

12.     Plaintiff Michael Lamb was wearing his seat belt and the force of the unexpected, abrupt stop propelled Mr. Lamb into the steering wheel and caused the seat belt to violently yank Plaintiff back into the seat, resulting in injury to his neck, lower back, and right hip. The intensity of the halt of the semi-tractor also caused injury to Plaintiff's left hand, which was on the steering wheel at the time of the incident.

13.     As a result of his injuries, Plaintiff Michael Lamb underwent cervical surgery, procedures, and treatments, which were very painful.

14.     Plaintiff Michael Lamb was driving a vehicle manufactured by Defendant.

15. The subject collision safety system was not properly designed to differentiate approaching overpasses from legitimate items in the roadway, which directly injured Plaintiff in this lawsuit.

16. At the time of the injury, the collision safety system was not modified or altered after it left Defendants' control, and the vehicle was being used in an ordinary and foreseeable manner.

17. In addition, the collision safety system lacked adequate instructions and warnings concerning such dangers.

18. The collision safety system was unreasonably dangerous and defective.

19. The defective condition of the collision safety system was the proximate and producing cause of Plaintiff's harm.

**B.   Freightliner's Roles as Product Seller and Designer of the Collision Safety System**

20. Defendant Daimler Truck Holding, also doing business as Freightliner, is a major manufacturer of "light, medium and heavy-duty trucks, city and intercity buses, coaches and bus chassis"[1] in the United States and around the world.

21. The subject collision safety system that caused the personal injuries to Plaintiff Michael Lamb was manufactured by Freightliner.

22. During the relevant time period, Defendant made decisions about when a design change was necessary for the collision safety system, set forth the schedule for any changes in design, and determined when the newly designed product was ready to go to market.

---

[1] https://www.daimlertruck.com/en/

23. In addition to selling the subject vehicles installed with the collision safety system, Freightliner controlled the design of the vehicles, including the collision safety system, which were sold not only by Defendant, but also by other retailers.

24. Additionally, Freightliner exercised substantial control over the content of warnings and instructions that accompanied the vehicles sold, including the collision safety system in question. The warnings and instructions were inadequate, and Plaintiff's harm resulted, in whole or in part, from the inadequacy of the warnings or instructions.

## IV. PLAINTIFFS' INJURIES

25. Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

26. As a result of Defendant's defective and unreasonably dangerous product, Plaintiff Michael Lamb has sustained temporary and permanent injuries and is entitled to judgment against the Defendant, for actual damages incurred in the past and reasonably likely to be incurred in the future including but not limited to reasonable and necessary medical expenses and other related expenses, caretaking expenses, loss of earnings, loss of future earning capacity, mental anguish, embarrassment, scars and disfigurement, physical injury to his person, physical impairment, and for the loss of the enjoyment of life.

27. Plaintiff Donna Lamb is the wife of Michael Lamb and claims damages from the Defendant on the theory of Loss of Consortium, as to fairly compensate her for the reasonable value of any loss of the services, society, companionship, and marriage relationship of her husband proximately caused by the fault of Defendants.

## VI. CAUSES OF ACTION

### COUNT I – DESIGN DEFECT

28. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

29. Defendant Freightliner was engaged in the business of marketing, manufacturing, selling, or otherwise distributing vehicles containing the collision safety system, including the accompanying labels, warnings, instructions, and written materials. Defendant is a product seller subject to the provisions of the Kansas Product Liability Act, K.S.A. 60-3301 *et seq.*

30. Freightliner's collision safety systems were defectively designed, which rendered it unreasonably dangerous for its anticipated, intended and foreseeable use in the following ways:

   a. Freightliner designed and/or sold vehicles installed with collision safety systems with defective and unreasonably dangerous sensors and/or communications systems that would result in improperly designating overpasses above the roadway as solid structures in the roadway that posed an imminent danger;

   b. Freightliner failed to adequately test its design to determine the likelihood of prevalence of "false positive" readings of roadway obstructions;

   c. Freightliner failed to provide adequate warnings about the inherent dangers involved in the use of the collision safety system in the vehicles it sold;

   d. Freightliner continued to sell vehicles installed with the defective collision safety systems and failed to initiate a recall, even after Freightliner had actual knowledge of its design defects through numerous complaints to the National Highway & Traffic Safety Administration (NHTSA);

   e. Freightliner knew or should have known at the time it supplied the subject vehicles containing the collision safety systems that such systems were defectively designed because they frequently registered false threats such as overpasses and

6

        misidentified objects in a way not contemplated by the average reasonable consumer and/or users of the product, and because the risks associated with Defendant's defective design outweighed any potential utility.

f.      Freightliner knew or should have known of other available collision safety systems that were available to safeguard consumers from the foreseeable dangers associated with driver use and to significantly reduce and/or eliminate the risk of improperly registered crashes, and Freightliner failed to install such properly working safety systems, and instead sold the semi-trucks with the defective collision safety system to Plaintiff, knowing of incidents where the collision safety system malfunctioned, such as the semi-truck Plaintiff was driving did, causing injuries; and

g.      Freightliner knew or should have known that consumers would use the collision safety system while operating their vehicles, creating an unreasonable danger and unexpected hazard of registering overpasses as solid objects in the roadway and causing injuries as a result; and/or

h.      Further design defects which may be illuminated during discovery of the relevant and material facts.

31.      Freightliner had actual or constructive knowledge of the defective conditions of the subject collision safety system alleged above at the time it sold the vehicles containing the safety systems, which ultimately caused Plaintiffs' injuries. Accordingly, the use of the semi-truck in the present case was, or should have been, reasonably foreseeable to Freightliner.

32.      As a direct and proximate result of one or more of Freightliner's acts or omissions and as a direct and proximate result of the collision safety system's defective design, Plaintiffs were injured and/or sustained damages.

7

33. Freightliner had actual knowledge of the defects alleged herein, and in putting the semi-trucks equipped with the collision safety system into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff Michael Lamb and for other foreseeable plaintiffs. Therefore, an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

### COUNT II - MANUFACTURING DEFECT

34. Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

35. On information and belief, Freightliner's collision safety system was defectively manufactured because the system fails to conform to Frieghtliner's own design specifications or performance standards in one or more of the following respects:

    a. The collision safety system was manufactured with defective materials;

    b. The collision safety system was improperly assembled;

    c. The collision safety system was manufactured without critical components or parts that render it defective and unreasonably dangerous for the user; and/or

    d. Further manufacturing defects which may be illuminated during discovery of the relevant and material facts.

36. As a direct and proximate result of one or more of Freightliner's acts or omissions and as a direct and proximate result of the collision safety system's defective manufacture, Plaintiffs were injured and/or sustained damages.

37. Freightliner had actual knowledge of the defects alleged herein, and in putting the semi-trucks equipped with the collision safety system into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff Michael Lamb and for

other foreseeable plaintiffs. Therefore, an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

## COUNT III - FAILURE TO WARN

38. Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

39. Freightliner failed to provide adequate warnings of the potential dangers associated with the uses and misuses of the collision safety system, including but not limited to the potential for the vehicle to register overpasses as solid structures in the roadway and signal an impeding crash, which would not be apparent to the ordinary consumer and/or user.

40. At the time the semi-truck left Freightliner's control, consumers, and/or foreseeable users, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with driving a vehicle equipped with the collision safety system.

41. At the time the semi-truck left Freightliner's control it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

42. Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Freightliner knew that the vehicles it sold containing the collision safety system, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

43. As a direct and proximate result of one or more of Freightliner's acts or omissions and as a direct and proximate result of the semi-truck's inadequate warnings, Plaintiff was injured and sustained damages.

44.     Freightliner had actual knowledge of the defects alleged herein, and in putting the vehicles containing the collision safety system into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff Michael Lamb and for other foreseeable plaintiffs.   Therefore, an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

## COUNT IV - FAILURE TO WARN

45.     Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

46.     At all relevant times, Freightliner had a duty as the manufacture and seller of the semi-trucks to warn users and/or give reasonable and adequate instructions with respect to the conditions and methods of safe use of the subject collision safety system.

47.     As set forth above, Freightliner knew or had reason to know that danger was reasonably foreseeable in the use of the collision safety system.

48.     At the time the semi-truck with the collision safety system left Freightliner's control, consumers, and/or foreseeable users, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using the collision safety system.

49.     Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Freightliner knew that its vehicles equipped with the subject collision safety system, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

50. As a direct and proximate result of one or more of Freightliner's acts or omissions and as a direct and proximate result Freightliner's failure to instruct, Plaintiff was injured and sustained damages.

51. Freightliner had actual knowledge of the defects alleged herein, and in putting the semi-trucks equipped with the collision safety system into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff Michael Lamb and for other foreseeable plaintiffs. Therefore, an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

## COUNT V - NEGLIGENCE

52. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

53. Freightliner owed consumers, bystanders, and/or foreseeable users, including Plaintiff, the duty of reasonable care in its marketing, distribution and sale of the vehicles containing the subject collision safety system.

54. Freightliner breached its duty of care by the following negligent acts and/or omissions, among others:

   a. failed to design a reasonably safe collision safety system;

   b. failed to incorporate a sensor that could properly distinguish between overpasses and solid structures/objects in the roadway in the product design;

   c. placed into the stream of commerce a vehicle containing a collision safety system that was defective in design and/or failed to contain adequate warnings and instructions;

      d.      placed into the stream of commerce a vehicle containing a collision safety system that was unfit for its foreseeable and intended uses and/or was likely to cause injury under ordinary and foreseeable use;

      e.      failed to provide adequate instruction and/or warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous when used in a reasonably-foreseeable manner and that users of the product would not realize the potential dangers associated with ordinary and foreseeable use;

      f.      failed to provide post-sale warnings, or to recall or retrofit the product, after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use; and

      g.      ignored and/or failed to investigate similar incidents involving the collision safety system; and/or failed to report incidents and lawsuits involving users who have been injured by the collision safety system to NHTSA and/or the Office of Defects Investigation (ODI).

55. As a direct and proximate result of Freightliner's negligence, the semi-truck was marketed, distributed, and sold in a defective condition, and it was unreasonable dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use by persons such as Plaintiff.

56. Plaintiff's injuries, and the manner in which they occurred, were reasonably foreseeable to Freightliner, which knew or should have known that individuals such as Plaintiff were being severely injured when their vehicles abruptly and violently came to a stop, when the subject collision safety system malfunctioned.

57. As a direct and proximate result of Freightliner's negligence, Plaintiff was injured and sustained damages.

58. Freightliner had actual knowledge of the defects alleged herein, and in putting the vehicles equipped with the collision safety system into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff Michael Lamb and for other foreseeable plaintiffs. Therefore, an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

### COUNT VI – VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT

59. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

60. Freightliner willfully engaged in conduct Kansas Consumer Protection Act. Deceptive Trade Practices Act. Kan. Stat. Ann. § 50-623 *et seq*.

61. Kan. Stat. Ann. § 50-623 through 636, otherwise known as the Kansas Consumer Protection Act ("KCPA"), sets forth the State's statutory program prohibiting deceptive and unconscionable trade practices.

62. Freightliner's business practices constitute the sale of "property" within the meaning of Kan. Stat. Ann. § 50-624.

63. Kan. Stat. Ann. § 50-626 provides "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Freightliner has engaged in prohibited conduct by misrepresenting the safety of the collision safety system.

64. Kan. Stat. Ann. § 50-626(b)(3) prohibits the use of concealment, suppression, or omission of any material fact in the connection with the sale of any goods. Freightliner has engaged in prohibited conduct by intentionally failing to inform Kansas consumers that the collision safety

system on its vehicles were unsafe to use and/or failing to warn of the potential hazards associated with the collision safety system.

65. As a direct and proximate result of Freightliner's violation of the KCPA, Plaintiff was injured and sustained damages including attorney's fees.

## COUNT VII - DAMAGES

66. As a result of his injuries, Plaintiff Michael Lamb has sustained temporary and permanent injuries and is entitled to judgment against the Defendant for actual damages incurred in the past and reasonably likely to be incurred in the future including but not limited to reasonable and necessary medical expenses and other related expenses, caretaking expenses, loss of earnings, loss of future earning capacity, mental anguish, embarrassment, scars and disfigurement, physical injury to his person, physical impairment, and for the loss of the enjoyment of life and attorney's fees.

67. As a direct, foreseeable and proximate result of the occurrences and the above described actions of Defendant, and of the defects identified above, Plaintiff Donna Lamb seeks damages for Loss of Consortium, which would fairly compensate her for the reasonable value of any loss of services, society, companionship, and marriage relationship of her husband proximately caused by the fault of the Defendants.

## COUNT VIII - PUNITIVE DAMAGES

68. Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

69. Freightliner knew or should have known, of the defects in design, manufacture, labeling, warning, and marketing that proximately caused the damages suffered by Plaintiff. Rather than cure said defects, Freightliner consciously, knowingly, and willfully allowed said defects to

remain while it continued to vigorously market and promote the vehicles containing the collision safety system for its own financial gain. Such conduct was continued by Freightliner with malice, or in reckless disregard of the consequences from which malice may be inferred.

## COUNT IX - DEMAND FOR TRIAL BY JURY

70. Plaintiffs pray for a trial by jury.

WHEREFORE, Plaintiffs Michael Lamb and Donna Lamb, pray that this Court enter judgment against Defendant, for compensatory and punitive damages in a sum to be determined by the trier of fact, for their costs, pre-judgment and post-judgment interest, attorneys' fees, and all other just and proper relief.

Respectfully Submitted,

BG LAW

/s/ Blake Green
Blake Green  D. Kan. No. 2191350
416 Armour Road
Kansas City, MO 64116
Tel: 816-800-9446
Fax: 816-463-2815
blake@bglawkc.com


SPRADLIN KENNEDY, LLC

/s/ Tracy L. Spradlin
Tracy L. Spradlin  KS Bar No. 26199
3770 Broadway Blvd., Ste. 111
Kansas City, MO 64111
Tel: 816-768-6900
Fax: 816-817-4299
tracy@spradlinkennedy.com

**ATTORNEYS FOR PLAINTIFFS**